PEOPLE v HUMPHREYS

Docket No. 184583. Submitted October 8, 1996, at Grand Rapids. Decided February 11, 1997, at 9:00 A.M.

Daryn L. Humphreys was convicted by a jury in the Calhoun Circuit Court, James C. Kingsley, J., of possession of less than twenty-five grams of cocaine. He was sentenced to three years of probation with a suspended jail term of six months and ordered to pay, among other things, the costs of prosecuting him and providing him with legal assistance. He appealed.

The Court of Appeals *held*:

1. The trial court abused its discretion in admitting into evidence the testimony of a police officer that a drug-sniffing dog had indicated that money possessed by the defendant at the time of arrest was contaminated by narcotics. The testimony was offered by the prosecution to rebut testimony in the defendant's case in chief that the defendant had won the money at a race track. The prosecution cannot introduce evidence on rebuttal unless it relates to a substantive matter. Here, the origin of the money was collateral to the issue whether the defendant possessed cocaine.

2. The erroneous admission of the rebuttal evidence was not harmless because it was both highly probable and more likely than not that it affected the verdict.

3. The trial court did not err in refusing to instruct the jury that it could convict the defendant of simple possession, MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b). Under the provisions of § 7403(2)(b), a violation of § 7403(2)(b) cannot serve as a lesser included offense where, as here, the defendant is charged with a violation of § 7403(2)(a).

4. The trial court did not err in denying the defendant's motion for a directed verdict on the asserted ground that insufficient evidence of possession of cocaine was presented. Circumstantial evidence of a safety pin inside the defendant's shirt and of a plastic bag of cocaine with pinholes found underneath a chair on which the defendant was seated when approached by the police constituted sufficient evidence of possession.

5. The trial court did not err in ordering the defendant to pay the costs of prosecution as well as the costs of his defense. MCL

771.3(4); MSA 28.1133(4), which governs conditions of probation, authorizes a court to require the probationer to pay as costs expenses incurred in prosecuting the probationer or in providing legal assistance to the probationer. Despite use of the word "or" in the statute, the Legislature intended to grant a sentencing court the discretionary authority to require a probationer to reimburse the public for expenses reasonably and properly incurred in connection with the case, with no distinction drawn between the costs of prosecution and the costs of defense, and therefore intended "or" to mean "and." However, the trial court failed to specify how it reached the amount of attorney fees the defendant must pay. On remand, the trial court must so specify if the defendant is again convicted and sentenced.

Reversed and remanded for a new trial.

NEFF, P.J., concurring, stated that, in light of the widespread contamination of currency with cocaine, the fact that a drug-sniffing dog has alerted the presence of cocaine on money is insignificant and should have no evidentiary value.

1. CRIMINAL LAW — EVIDENCE — REBUTTAL EVIDENCE.

The prosecution can introduce evidence on rebuttal only if the evidence relates to a substantive matter and it refutes, contradicts, or explains evidence presented by the opposing party; evidence relating to a collateral matter is not admissible on rebuttal.

2. SENTENCES — PROBATION — PROSECUTION AND DEFENSE COSTS.

A court that imposes a sentence of probation has discretionary authority to order that the probationer, as a condition of probation, pay both the costs of prosecuting the probationer and the costs of providing legal assistance to the probationer (MCL 771.3[4]; MSA 28.1133[4]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Susan K. Mladenoff*, Prosecuting Attorney, and *Nancy Mullett*, Assistant Prosecuting Attorney, for the people.

*James W. Daly*, for the defendant on appeal.

Before: NEFF, P.J., and HOEKSTRA and G. D. LOSTRACCO*, JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant was convicted by a jury of possession of less than twenty-five grams of cocaine. MCL 333.7403(2)(a)(v); MSA 14.15(7403)(2)(a)(v). Defendant was sentenced to three years' probation with a six-month suspended jail term. Defendant was also fined $100 and ordered to pay $1,000 in costs, $40 to the crime victim rights fund, $1,333.18 in attorney fees, $150 in forensic fees, and $360 in supervisory fees. Defendant appeals his conviction, sentence, and award of costs and attorney fees as of right, and we reverse and remand for a new trial.

I

We first address defendant's argument that the trial court erred in allowing the prosecution to elicit certain rebuttal testimony. We agree with defendant that he was denied a fair trial by the admission of the testimony and therefore reverse defendant's conviction.

A

In the prosecution's case in chief, Officer Scott Ciupak, the arresting officer, testified that defendant possessed $169 when arrested. In his case in chief, defendant testified, as did one of his witnesses, that he had recently won the money at a race track. Because of this testimony, the prosecution introduced in rebuttal, over defendant's objection, the testimony of Officer Kurt Etter that the money found on defendant was taken to a trained, drug-sniffing dog, which "alerted," an indication that the money was contaminated by drugs.

Defendant objected below to this testimony on the grounds that it could have been brought forth in the prosecution's case in chief, that where the money

came from was merely a collateral matter, and that, even if proper, the testimony was irrelevant.

B

A trial court's decision regarding the admission of rebuttal testimony will not be disturbed absent an abuse of discretion. *Winiemko v Valenti*, 203 Mich App 411, 418; 513 NW2d 181 (1994). Rebuttal evidence is limited to refuting, contradicting, or explaining evidence presented by the opposing party. *People v Leo*, 188 Mich App 417, 422; 470 NW2d 423 (1991). The prosecution cannot introduce evidence on rebuttal unless it relates to a substantive rather than a collateral matter. *People v Losey*, 413 Mich 346, 351-353; 320 NW2d 49 (1982).

Here, we conclude that the trial court abused its discretion in allowing the prosecution to introduce the complained-of rebuttal testimony because it could have been introduced in the prosecution's case in chief, and because it related to a collateral issue.[1]

---

[1] While we have determined that the rebuttal testimony offered by the prosecutor was inadmissible because it related to a collateral issue, we are constrained to comment regarding the other grounds on which defendant objected to the testimony. Before our Supreme Court decided *People v Figgures*, 451 Mich 390; 547 NW2d 673 (1996), the clear rule was that a prosecutor could not introduce evidence on rebuttal that could have been introduced in the people's case in chief. *Losey, supra.*

Under *Losey*, the rebuttal testimony in this case would have been inadmissible on the basis that it could have been introduced in the case in chief. Officer Ciupak testified that he knew when he arrested defendant that defendant claimed he had won the money at the race track. Thus, the prosecution cannot claim surprise that defendant testified to this fact and could have introduced this testimony in its case in chief. However, the majority opinion in *Figgures* creates something of an exception to the general rule laid down in *Losey* with regard to exclusion of rebuttal testimony on this basis.

In *Figgures*, the Court focused on whether the rebuttal testimony was introduced to counter the defendant's case, in which instance it would be admissible, or whether the rebuttal testimony was in response to a denial

The prosecution offered the rebuttal testimony to refute defendant's explanation regarding the origin of the money. We conclude that the origin of the money was collateral to whether defendant possessed the drugs in question.

The fact that the drug dog indicated that the money in defendant's possession was contaminated with drugs would refute defendant's claim that he won the money at the race track only if the prosecution intended to claim, under a drug profile theory, that defendant possessed the money because he was a drug dealer. That is, under a drug profile theory, all drug dealers carry large sums of money, and, because defendant was carrying a large sum of money that the dog indicated was contaminated with drugs, defendant was a drug dealer. Drug profile evidence, however, has been held to be inadmissible as substantive evidence of a defendant's guilt in a drug case. See *People v Hubbard*, 209 Mich App 234; 530 NW2d 130 (1995). Thus, the testimony was, at best, collateral to the disputed issues at trial.

---

elicited on cross-examination of the defendant by the prosecutor to facilitate admission of *new* evidence, in which case it would not be admissible. *Figgures*, *supra* at 401. On this basis, *if the rebuttal testimony was relevant to defendant's case*, the testimony in this case would be admissible because defendant testified in his case in chief that he won the money at the race track; the testimony was not elicited by the prosecutor on cross-examination of defendant for the purpose of facilitation of the admission of new evidence, i.e., that the drug dog alerted to the money.

The question then is whether defendant's explanation of the source of the money made the prosecutor's rebuttal evidence any more relevant to providing the basis for an attack on defendant's credibility by suggesting an alternate source of the money. *Id.* We think the rebuttal evidence was not relevant or admissible for this purpose for the same reasons expressed in part I B of this opinion.

Accordingly, we conclude that the trial court abused its discretion in allowing the prosecution to elicit this rebuttal testimony.

C

Having concluded that the trial court erred in allowing the rebuttal testimony, we must still determine whether the resulting error was harmless. We conclude that it was not, focusing on the highly prejudicial nature of this evidence compared with its low probative value.

1

Our Supreme Court has recently discussed at length the harmless-error rule as it relates to preserved, nonconstitutional error. *People v Mateo*, 453 Mich 203; 551 NW2d 891 (1996). The majority opinion concluded that for purposes of applying the harmless-error rule, preserved, nonconstitutional error is not to be viewed in terms of whether the defendant is guilty. Rather, the error once determined to exist, is to be reviewed in terms of its effect on the factfinder. *Id.* at 221.

An appellate court on direct appeal, must have a "level of assurance" that the error was not prejudicial and was therefore harmless. *Id.* at 218. The *Mateo* opinion does not decide the question what that "level of assurance" must be, noting that there are at least two possibilities. *Id.* at 218-219. The first possible test is whether it is *highly probable* that the error did not contribute to the verdict. The second is whether it is *more probable than not* that the error did not affect the verdict, a preponderance of the evidence standard. *Id.* at 218-221. Despite the lack of guidance with

regard to which test to apply, we reverse in this case because, under either test, we cannot say that the error was harmless.

2

In this case, the prejudice to defendant's case is obvious; the prosecution was allowed to introduce evidence that defendant's money was contaminated by drugs, leading to the inference that defendant's drug possession caused the contamination, or even more damning, that defendant was involved in drug transactions. The evidence of guilt was by no means overwhelming without the evidence of drug-contaminated money in defendant's possession. The effect on the factfinder can hardly be more clear. We conclude that the probative value of the dog-sniff evidence was substantially outweighed by its prejudicial effect and, therefore, defendant was denied a fair trial by its admission. We conclude that the error in the admission of the evidence was not harmless because it was both *highly probable* and *more likely than not* that it did affect the verdict.

II

We next address defendant's remaining claims of error that may occur during retrial.

A

Defendant argues that the trial court erred in failing to read an instruction that defendant could be convicted of simple possession under MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b). We disagree.

Defendant relies on this Court's opinion in *People v Gridiron*, 185 Mich App 395; 460 NW2d 908 (1990), in support of his position. However, that opinion was

vacated in *People v Gridiron (On Rehearing)*, 190 Mich App 366; 475 NW2d 879 (1991).

Further, a plain reading of subsection 2(b) leads us to the conclusion that violations of that subsection are not to be considered lesser-included offenses when a defendant is charged under subsection 2(a) of § 7403. The statute provides:

> (2) A person who violates this section as to:
>
> *     *     *
>
> (b) A controlled substance classified in schedule 1, 2, 3, or 4, except a controlled substance for which a penalty is prescribed in subdivision (a), (c), or (d), or a controlled substance analogue, is guilty of a felony, punishable by imprisonment of not more than 2 years, or a fine of not more than $2,000.00, or both. [MCL 333.7403; MSA 14.15(7403).]

Accordingly, because defendant was charged under subsection 2(a), he falls within the exception in subsection 2(b). On that basis, the violation of subsection 2(b) cannot be considered a lesser-included offense of a violation of subsection 2(a), and the trial court properly refused to give the requested instruction.

B

Next, defendant argues that the trial court erred in denying his motion for a directed verdict at the close of the prosecution's case. Specifically, defendant argues that the prosecution failed to prove defendant possessed the cocaine. We disagree.

Officer Ciupak testified below that when he approached defendant, who was sitting down playing dominoes in the backyard of an acquaintance's home, he observed defendant place his hands inside his

shirt. When Officer Ciupak asked defendant to get up, he noticed a bag containing drugs underneath defendant's chair. Further, a safety pin was found on the inside of defendant's shirt, and the plastic bag containing the cocaine contained two pinholes, with a tear in between them. When viewed in a light most favorable to the prosecution, we find this circumstantial evidence to be sufficient proof of defendant's constructive possession to allow the case to be submitted to the jury. See *People v Konrad*, 449 Mich 263; 536 NW2d 517 (1995).

C

Finally, defendant argues that the trial court erred in ordering defendant to pay both the costs associated with prosecuting him, as well as the costs associated with defending him. We disagree.

MCL 771.3(4); MSA 28.1133(4) provides:

> The court may impose other lawful conditions of probation as the circumstances of the case require or warrant, or as in its judgment are proper. If the court requires the probationer to pay costs, the costs shall be limited to expenses incurred in prosecuting the defendant or providing legal assistance to the defendant and supervision of the probationer.

Defendant argues that because the Legislature used the word "or" between the phrases regarding "expenses incurred in prosecution" and "providing legal assistance," the trial court was unauthorized to tax defendant with regard to both those costs.

The primary goal of statutory interpretation is to ascertain and give effect to the legislative intent. *Root v Ins Co of North America*, 214 Mich App 106, 109; 542 NW2d 318 (1995). In this case, the use of the dis-

junctive "or" gives rise to an ambiguity in the statute because it can be read as meaning either "and" or "or." Accordingly, we must construe the word to give effect to the Legislature's intent. *Id.* The Court in *Root*, at 109, discussed the often double meaning of the word "or":

> The popular use of "or" and "and" is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context.

Our Supreme Court interpreted the statute in question in *People v Teasdale*, 335 Mich 1, 4-5; 55 NW2d 149 (1952), and concluded that its purpose was to grant to the court discretionary authority to require a probationer to reimburse the public for expenditures reasonably and properly incurred in connection with the case. This pronouncement of the purpose of the statute does not distinguish between prosecution and defense costs and we can think of no reason to do so. Accordingly, we conclude that the Legislature intended the "or" in MCL 771.3(4); MSA 28.1133(4) to mean "and."

We conclude that the trial court properly ordered defendant to pay those costs relating to both the prosecution and the defense of his case.

However, on the record presented, we agree with defendant that we cannot ascertain the manner in which the court reached the amount of attorney fees it ordered. Because of our disposition of this case, we need not fully address this issue except to say that on

retrial, if defendant is again convicted and sentenced in this manner, we direct the trial court to state with specificity the manner in which the amount of attorney fees is reached.

Reversed and remanded for a new trial. We do not retain jurisdiction.

NEFF, P.J. *(concurring).* I fully concur in the reasoning and result of the opinion per curiam. However, I write separately to address the issue, not directly raised, but tacitly implicated, i.e., the evidentiary value of narcotics dog alerts on money.

The fact that money is contaminated by drugs does not prove a connection between the person possessing the money and illegal drugs. An accumulating body of evidence exists that much, if not most, of this country's currency has been contaminated by cocaine. Cases in other jurisdictions cite several studies indicating that anywhere from one-third to ninety-seven percent of the circulating currency has been tainted by cocaine. Many of those cases were cited in *United States v $5,000 in US Currency,* 40 F3d 846 (CA 6, 1994). In that opinion, the federal Court of Appeals stated that it found, with regard to contaminated money, "the evidentiary value of the narcotics dogs alert to be minimal." *Id.* at 849. The court then offered this analysis:

> Why the nation's currency is so thoroughly corrupted has been a topic of inquiry. It has been estimated that one out of every three circulating bills has been involved in a cocaine transaction. Cocaine attaches—in a variety of ways—to the bills, which in turn contaminate others as they pass through cash registers, cash drawers, and counting machines at banks and commercial establishments. Dr. Woodford [the defendant's expert] testified that, as a result,

bills may contain as little as a millionth of a gram of cocaine, but that is many times more cocaine than is needed for a dog to alert. [*Id.* at 849-850. Citations omitted.]

Accordingly, I would find an additional basis for our decision in this case. That is, any significance of dog sniff alerts on money is de minimus and of no evidentiary value.